IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Hylant Group, Inc.,                                                       Case No. 3:10CV1782

        Plaintiff

    v.                                                                ORDER

Jay K. Cummings,

        Defendant

       This is an action to enforce a covenant not to compete and for tortious interference with business relations. Plaintiff Hylant Group, Inc. (Hylant) is a large nationwide insurance brokerage. Defendant Jay K. Cummings was a long-time Hylant employee until he resigned and went to work for a competitor. Six of Hylant's customers have followed Cummings to his new office.

        Cummings was subject to a covenant not to compete. Without deciding, and solely for purposes of this opinion, I assume that the covenant is enforceable and Hylant will prevail on the issue of its breach and the related claim for tortious interference.

        Pending is Cummings' Motion to Establish the Proper Method of Determining Damages. (Doc. 21). Hylant contends that the motion, which grows out of an unsuccessful mediation by the

Magistrate Judge, is premature. Nonetheless, Hylant has responded on the merits to Cummings' motion.

The parties agree that the purpose of an award of damages is to make the prevailing party whole. They also agree that, where a conventional claim of lost profits is at issue, a damage award deducts expenses from income.

Hylant contends, however, that a conventional lost profits approach would not leave it whole *vis-a-vis* the losses Cummings' departure, and that of the six customers, caused. In addition to lost profits as ordinarily computed in a breach of contract case, Hylant argues that the unique nature of the business relationship between an insurance broker and its customers justifies a different approach to evaluation of what it has lost.

With regard to computation of lost profits, Hylant argues that computation of its lost profits has to take into account the income reasonably likely to be generated in future years, even though a particular policy (and the premium commissions it has generated) expires.[1][2]

---

[1] Hylant bears the burden of proof as to whether a continuing relationship, and thus the future income stream would exist. Cummings represents that the two most major customers had informed him they would be leaving Hylant no matter what. What the facts were in that regard, especially in light of any customer's unilateral right to find a better deal elsewhere, is for the jury to determine.

[2] The parties' briefs focus primarily on their views of the damages recoverable under Hylant's breach of contract claim. I note, though, that, at least arguably, consequential damages of the sort that Hylant appears to be claiming from loss of the *customers*, and not just the customers' *premium commissions*, are recoverable in tort. *See* Restatement 2d Torts § 774A, Comment d. I make no decision on that question.

I note, moreover, the damage instruction as to this claim from Ohio Jury Instructions - Civil 453.01 (emphasis supplied):

> DAMAGES — LOST PROFITS (ADDITIONAL).
>
> Lost profits are calculated by deciding what the plaintiff was entitled to receive had

Hylant also contends that it is entitled to recover the value of each of the six accounts when they were still part of its inventory. According to Hylant's expert, Lorna Gunnersen, pursuant to insurance industry practice, the value of an account is established by formula of a multiple of earnings or gross revenue. According to Hylant, this formula is enables calculation of an anticipated future income stream.[3]

This formula, according to Hylant, is the basis on which the insurance industry calculates the value of an account when an account is sold from one broker to another. This formula was used by Cummings and Hylant to try to negotiate an amicable separation, whereby Cummings would pay Hylant to leave and take the accounts with him. Had these negotiations succeeded, as apparently they frequently do in the insurance brokerage world, this suit would not be here.

Cumming's conversion (as it were) of the six accounts should not, Hylant argues, be without cost. If it were, he would reap a windfall, as he would have gotten something for nothing that he should have paid for.

---

the plaintiff and (insert name of third party) (continued their) (entered into a) business relationship. *You should then add other damages, if any, suffered by the plaintiff as a result of the defendant' s improper interference*. From this sum you should subtract the amount, if any, that the plaintiff saved by not having to fully perform in the business relationship. You may only award damages the existence and amount of which are reasonably certain and have been proved to you by the greater weight of the evidence. You may not award damages that are remote or speculative.

*See also Developers Three v. Nationwide Ins. Co.*, 64 Ohio App.3d 794, 803, 582 N.E.2d 1130 (1990) ("plaintiff's correct measure of damages in this tortious interference action is the plaintiff's loss (including lost profits) that arises out of the tortious interference, not the defendant's gain.")

[3] Hylant would have the burden of showing what it is that is unique about a "future income stream" in the insurance business that would justify unique formulation of its losses beyond lost profits, as that term normally is understood.

Cummings argues that awarding Hylant anything but its lost profits would give Hylant a windfall, and be without precedent.[4] On the other hand, if Hylant is correct about the value of the accounts, there is a risk that it will not be made whole without recovering something to compensate it for the loss of such value.

On reading the briefs, I conclude that Cummings, though framing his request as one for a declaration of the measure of damages, is, at least implicitly, trying to preclude Hylant from offering its theories and evidence as to its losses.

Hylant believes it can show that it is more likely than not, despite Cummings' evidence to the contrary, that it would have retained the customers as its own. That being so, Hylant also contends that, when Cummings departed with those customers, he took something, the value of which can be calculated in an industry-customary manner.

If so, and if Hylant persuades the jury that it would have kept what Cummings took, then a verdict based only on the lost profits between the time Cummings left and the policies expired would not make Hylant whole.

In response to Cummings' specific request to define the measure of damages, I conclude that the conventional boilerplate formulations as to claims for breach of contract, Ohio Jury Instructions - Civil 501.33, and interference with business relations, *id.* 453.01, appear to suffice as a statement

---

[4] Cummings correctly notes that Hylant has cited no cases supporting its contention. Cummings, for his part, cites no case limiting to lost profits a claim for damages against a broker who, in the face of a covenant not to compete, decamped from an insurance brokerage and took customers with him.

4

of the measure of damages.[5] In the final analysis, what Cummings is talking about here is whether Hylant's anticipated theories and evidence can go the jury.

I agree that they can: Hylant has propounded a statement of losses that fits within the conventional make-whole doctrine.

A couple of other points. I agree, based on what I have seen so far, that Ms. Gunnerson is qualified to present her opinions, which, based in conventional industry practice, appear reliable (though Cummings may subject them to dispute with an expert of his own). Her opinions are also relevant to how Hylant describes its losses and how it seeks to be made whole.

I also agree with Cummings' contention that Hylant could have protected itself by including a liquidated damages clause in the covenant not to compete. That it did not do so does not, however, prevent Hylant from presenting its case as to losses to the jury for decision.

It is, therefore,

ORDERED THAT this opinion be, and hereby is this Court's ruling on defendant Cummings' Motion to Establish the Proper Method of Determining Damages. (Doc. 21).

So ordered.

s/James G. Carr
United States District Judge

---

[5] Subject, of course, to further refinement as the parties may suggest or desire.